NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 9 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-3774 |
| Plaintiff - Appellee, | D.C. No. 2:21-cr-00106-WBS-1 |
| v. | |
| GABRIEL DIOP, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Argued and Submitted August 22, 2025
San Francisco, California

Before: CHRISTEN, LEE, and BRESS, Circuit Judges.

Gabriel Diop pled guilty to mail fraud, 18 U.S.C. § 1341, and aggravated

identity theft, 18 U.S.C. § 1028A, for his scheme to defraud the State of California

of unclaimed property. Diop appeals his 120-month sentence. We have jurisdiction

under 28 U.S.C. § 1291. We affirm.

At Diop's sentencing in June 2024, and applying the then-operative 2023

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

version of the Sentencing Guidelines, the district court calculated Diop's base offense level at 28, which included a 20-level enhancement for a "loss" exceeding $9,500,000. U.S.S.G. § 2B1.1(b)(1)(K).[1] This enhancement was based on a total loss calculation of approximately $11 million, consisting of roughly $1.8 million of "actual loss" for money that Diop successfully obtained from California's Controller's Office, and another approximately $9 million in "intended losses" for amounts that Diop attempted to steal. Diop had submitted false claims for the additional $9 million, but his scheme was uncovered before he could receive this money.

At the time of Diop's sentencing, § 2B1.1 of the Guidelines did not define "loss," but the commentary to the Guidelines specified that "loss" should be calculated based on "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3. Diop argues that the district court erred in treating "loss" as including intended loss because, in his view, intended loss is not a permissible interpretation of "loss" under the Guidelines. Because Diop preserved this error below, we review this issue de novo. *United States v. Trumbull*, 114 F.4th 1114, 1117 (9th Cir. 2024).

We have held that the Sentencing Commission's commentary to the Guidelines is equivalent to an agency's interpretation of its own regulations. *See*

---

[1] Unless otherwise noted, all citations of the Guidelines and Guidelines commentary are of the 2023 version in place when Diop was sentenced.

*United States v. Castillo*, 69 F.4th 648, 655–56 (9th Cir. 2023).  The permissibility of Guidelines commentary is therefore assessed under the three-part framework in *Kisor v. Wilkie*, 588 U.S. 558 (2019).  *See Castillo*, 69 F.4th at 655–56.[2]

*First*, under *Kisor* and *Castillo*, we ask whether the meaning of "loss" in U.S.S.G. § 2B1.1 is "genuinely ambiguous" after "exhaust[ing] all the 'traditional tools' of construction."  *Castillo*, 69 F.4th at 655 (quoting *Kisor*, 588 U.S. at 575).  If "loss" is unambiguous, we do not defer to the commentary.  *Id.*  Although Diop argues that "loss" is unambiguous, we recently held otherwise in *United States v. Yafa*, 136 F.4th 1194 (9th Cir. 2025).  *Yafa* concluded that "the term 'loss' is genuinely ambiguous . . . because no single meaning of loss is evident from § 2B1.1's text, even after employing the traditional tools of interpretation."  *Id.* at 1197–98.

*Second*, and because "loss" is genuinely ambiguous, we ask whether the commentary's interpretation of the Guidelines text "come[s] within the zone of ambiguity the court has identified after employing all its interpretive tools"—in other words, whether the interpretation is "reasonable."  *Id.* at 1198 (brackets in original) (quoting *Kisor*, 588 U.S. at 575–76).  *Yafa* explained that "the zone of

_____

[2] In November 2024, the Sentencing Commission amended the Sentencing Guidelines to move the "intended loss" language from the commentary into the text of the Guidelines.  *See* U.S.S.G. § 2B1.1 (2024 ed.); *United States v. Hackett*, 123 F.4th 1005, 1009 (9th Cir. 2024).  That change will obviate the issue in this case going forward.  As noted, Diop was sentenced before this change went into effect.

ambiguity for the term 'loss' stretches, at a minimum, along a spectrum from the actual, calculable loss experienced by victims of an economic crime to the far broader harms involved in and arising out of a defendant's criminal conduct." *Id.*

Within this zone of ambiguity, "intended loss" is a permissible interpretation of "loss." The Guidelines' relevant conduct provision broadly requires sentencing courts to consider not only "all harm that resulted from the acts and omissions" but also "all harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(3). If "loss" does not include "intended loss," we would not be able to give meaningful effect to the relevant-conduct guideline in § 1B1.3. *Cf. Yafa*, 136 F.4th at 1198 (relying on the relevant conduct provision in finding "loss" genuinely ambiguous). In addition, because "loss serves as a measure of the seriousness of the offense and the defendant's relative culpability," U.S.S.G. § 2B1.1 cmt. (background), Diop's interpretation "would hamstring courts in fulling this purpose," *Yafa*, 136 F.4th at 1198, creating unwarranted disparities based on the happenstance of whether the defendant's wrongdoing was discovered before he could complete his crime. For these reasons, the Commission's treatment of "loss" as including "intended loss" is reasonable.

*Third*, under *Kisor* and *Castillo*, we consider whether the Commission's interpretation "is entitled to 'controlling weight.'" *Id.* at 1197 (quoting *Kisor*, 588 U.S. at 576). Here we assess "whether the interpretation (1) constitutes the agency's

'official position, rather than any more ad hoc statement not reflecting the agency's views,' (2) implicates the agency's 'substantive expertise,' and (3) reflects the agency's 'fair and considered judgment.'" *Id.* at 1199 (quoting *Kisor*, 588 at 576–79).

In this case, the Commission's interpretation is entitled to controlling weight under *Kisor*. The Commission has used anticipated loss from the completion of a crime to calculate "loss" from essentially the inception of the Sentencing Guidelines. *See* U.S.S.G. §§ 2B1.1 cmt. n.2, 2F1.1 cmt. n.7 (1988 ed.). The challenged commentary "is issued by the Commission as its official position" and it "implicates the Commission's substantive expertise." *Yafa*, 136 F.4th at 1199. The "intended loss" commentary therefore does not "reflect a 'convenient litigating position' or 'new interpretation . . . that creates "unfair surprise" to regulated parties.'" *Id.* (quoting *Kisor*, 588 U.S. at 579) (omission in original).

Because the commentary's interpretation of "loss" as "intended loss" satisfies all three of the *Kisor* factors, it is entitled to deference. The district court therefore did not err when it sentenced Diop based on the intended loss associated with his offenses.

**AFFIRMED.**